Jones, J.
The ancestor, James McClurg, executed his will February 27, 1876, and died the following September. At the time of the execution of the will he had three sons living, and one daughter deceased, leaving four minor children. After making provision for his wife, and for the payment of debts, James McClurg made the will in question, devising his whole farm to his son William upon the condition that he pay one thousand *24 dollars to each of his two brothers and one thousand dollars in the aggregate to the four minor children of his deceased sister. William McClurg’s wife, Bachel, died February 1, 1920, surviving her husband about four years. The plaintiffs in error, who are Bachel’s devisees, but strangers to the blood of the ancestor, are contesting the inheritance against the defendants in error, who are William McClurg’s brothers and the children of his deceased sister, who are of the whole blood of the ancestor, James Mc-Clurg. Plaintiffs in error state the question thus: “Did William McClurg take said 100 acres of land by descent or by purchase? If by descent, the title would go to his brother and sister because they are of the blood of the ancestor from whom the estate came. If by purchase, it would go to his wife as his sole heir and by devise from her to her brother and sister, plaintiffs in error herein.”
It will be seen therefore that defendants in error claim title under Section 8573, General Code, while plaintiffs in error claim title under the following section, Section 8574. The pertinent clauses of Section 8573, General Code, read as follows: “When a person dies intestate, having title * * * to any real estate * * * in this state, which title came to such intestate by descent, devise, or deed of gift from an ancestor, such estate shall descend and pass in parcenary to his or her kindred in the following course * * *.” That section thereafter provides that if William McClurg at the time of his decease had no children or their legal representatives living, the estate should vest in his wife during life and at her death in the brothers and sisters of the intestate, who are of the blood of the ancestor from whom the *25 estate came, etc. It will be observed by this section that the real estate is made ancestral property if the intestate has acquired it, first, by descent; second, by devise; or, third, by deed of gift. It is conceded that William McClnrg did not acquire the property by deed of gift or by descent. Did he acquire it, although subject to the legacies mentioned, by “devise,” as prescribed in that section?
Plaintiffs in error claim that the property devised was not ancestral, that it came to William McClnrg by purchase; that because the payment of legacies was imposed upon him it did not come to him as a “pure gift from an ancestor.” The language of the statute is plain. It provides that if the title came to such intestate by devise, the property descends as ancestral property and not as a new acquisition or purchase by the intestate. The legislature. did not qualify the word “devise” by the word “gift,” as it did the word “deed.” The language employed in the section is clear. Its meaning is that ancestral property acquired by descent, devise or will, or deed of gift, shall pass in the manner stated/ Undoubtedly the word “devise” presupposes a gift of the property devised. Anderson’s Dictionary of Law defines “devise” as “To give realty by will” or as “A disposition of real property, contained in a man’s last will and testament.” There are other various definitions of the word, such as “a disposition of real property by a person’s last will and testament to take effect after the testator’s death.” In the instant case, the testator had only his farm to devise. He had three living children and one deceased. It is impossible to ascertain what the ancestor regarded its full value when ho *26 divided his property among his four children or their representatives. Undoubtedly he intended William to have the interest devised to him by the will as a gift, and, in imposing the condition that William pay the legacy of three thousand dollars to his brothers and the children of his deceased sister, considered there was sufficient valuable interest above that sum to more than recompense him for the amount of the legacies he was required to pay. This valuable interest willed or devised to William was a gift merely, and constituted a devise within the meaning of the section quoted. Wherever, in eases of this character, under similar statutes of descent, this question has been reviewed by the courts of this country it has been held that a devise to an intestate, subject to the payment of legacies, constitutes ancestral property, which passes to those who are of the whole blood of the ancestor.
It will be observed further that the section quoted operates upon the title of the real estate. It provides that where the intestate dies having title to real estate, which title came to such intestate by devise, it shall pass as ancestral property. It is beyond dispute that the title the intestate had in this real estate came to him by devise, and there is nothing in the will to show that the ancestor intended by the terms of his will to single out one of his children and confer upon him an estate by purchase. It was not an estate by way of purchase, for his son William was not bound to pay anything, either to the ancestor or to his estate. Whatever he acquired from the ancestor, he acquired by will or devise, and as a gift from his father. Whether he should or should not accept this gift was within the *27 election of the son, who might either accept it by paying the legacies mentioned, or reject the terms of the will altogether; bnt by acquiescence in the terms of the will he took the real property from his father as a gift, subject to the conditions named. Acceptance would be presumed to accrue to his financial advantage; and the interest devised, above the legacy amounts, was a gift. The father undoubtedly undertook thus to allocate the value between his four children or their representatives. In Case v. Hall, Administrator, 52 Ohio St., 24, the ancestor had devised to his son all remainder of his real estate, with the requirement that the son should pay $8,000 to the children of the devisee’s sister. Min-shall, J., at page 33 says that the devise subject to the legacy “went to increase the amount of his estate, less only the sum of the legacies to be paid. ’ ’ And again, on page 34, “He designed that his son should have the land, for he in plain terms gives it to him.”
The question involved is an important one in this state. Within the experience of the bench and bar many of the wills executed have clauses imposing a condition for payment of legacies, and it has generally been understood that devises of this character, embodied in such wills, have converted the inheritances into ancestral property and passed accordingly. It has been determined by this court in several cases that the course of descent is controlled entirely by the legal title.
“Hnder the statutes of descent and distribution, the course of descent of real estate is to be controlled by the legal title.” (Patterson v. Lamson, 45 Ohio St., 77; Stembel v. Martin, 50 Ohio St., 495, and Rus *28 sell v. Bruer, 64 Ohio St., 1.) Therefore it is necessary that prospective purchasers must ascertain from the legal title whether the estate acquired is ancestral or not.
There is an allegation in the answer of plaintiffs in error that the amount of these legacies was equivalent to the value of the land devised to William MeClurg, but by the principle just announced he who inspects the chain of title must be controlled by the legal title as it appears from the will itself. It may be that the devisee thought that the payment of the legacies constituted full compensation for the farm devised him. But the testator may have had a different notion about it, and concluded on the other hand that after the payment of legacies to the devisee’s brothers and the children of his sister there was a sufficient interest left in the farm to more than compensate the devisee for the payment of such legacies.
This phase of the case is fully covered by Kinney v. Glasgow, 53 Pa. St., 141, where, as in this case, the devise of real estate had been charged with a legacy. On page 144 the court says: “Nor does the -charge of $100, to be paid to the half-sister, evidence any intention to treat the devisee as a vendee. There is nothing in the legacy or the devise itself which indicates the legacy to be a price fixed as a consideration of the devise. * * * It has no measure, for the land has no value determined by the will, but must be valued by an outside test to be applied long after the will has been made; while the true apportionment in the mind of the testator, if indeed he thought of what he has not expressed, was that existing at the time of making his will. There being *29 no testamentary rule by which the land can be apportioned between the gratuity and the encumbrance, there is no reason to conclude that the testator meant to devise any portion of the land in consideration of the payment of the charge upon it. And, independently of an express intent, there is nothing in the charge itself which should convert the devise into a mere purchase, The subject of it still retains its prime character as a gratuity. * * * The payment but diminishes the value of the gratuity, but not its character.”
It would be incompetent to allege or support an issue that the legacies were equivalent to the value of the farm, for the reason that the legal title could never be determined in that way except by a court years later, and after failure of issue by the intestate. In the instant case forty years elapsed before the title could have been determined, for "William might have had lineal heirs during that period. The legal title would be in rnbibus, as to its character, until it could be determined whether the amount of the legacies fully compensated the devisee. It would be an attempt to control the legal title by an equitable issue.
“It is so well settled in this state that the descent of real property is controlled by the legal title, that it would not be profitable to continue discussion here.” Russell v. Bruer, supra.
In the case of Hostetler v. Peters, 94 Ohio St., 17, without deciding the exact question involved here, this court assumed that a devise, subject to the payment of legacies, was ancestral property. There Mary Jane Shroy had devised to her niece Serena Jane Peters certain real estate described in the *30 will, and she provided therein that “It is my will however that my said niece Serena Jane Peter pay within five years after my death the sum of Bight Hundred Dollars to the three children of my sister Catherine Smith.”
As in the instant case, there was a devise from aunt to niece of specific real estate to the latter with a provision that the devisee should pay a sum of money. The chief question determined was whether the aunt was an “ancestor” within the meaning of Section 8573, General Code, hut the court held that the estate was ancestral although it was subject to a legacy. It held in its syllabus: “The real estate of which S. J. H. [the niece] died seized was ancestral within the meaning of Section 8573, General Code.” This devise to the niece was subject to a legacy. In his opinion, Newman, J., said at page 20: “The court of appeals took the position that the real estate in question came to the wife of plaintiff in error by devise from an ancestor.” This court affirmed the judgment of the court of appeals. If the estate charged with a legacy were one of purchase, the judgment of this court would have been in favor of the niece’s husband, who was not of the blood of the ancestor. This court held he had only a life estate in the- ancestral estate, under Section 8573, General Code.
So far we have confined ourselves to the plain terms of our own statute, which does not require interpretation, viz.: That when the title comes to the intestate by devise it is ancestral property for the reason that the descent is based upon the legal title so devised. Coming now to cases in point in other states, where the statutes of descent and distribution are similar to our own, we find that the *31 courts of last resort of such states have held that a charge imposed upon a devisee does not convert the devise into one of purchase. In West v. Williams, 15 Ark., 682, one Mrs. Taylor had devised her real and personal property to her daughter, “the same to have and to hold subject to the legacies aforesaid.” In that case the land only was under consideration by the court, and the attorney for one who was a stranger to the blood of the ancestor, in his brief, contended: “Under the circumstances of the case, and the heavy legacies charged upon it, that under the 10th section, it became a new acquisition in the hands of his son; and ascended to the father for his lifetime. And that such legacies were so charged upon the estate, and so changed its nature and condition. ’ ’ Answering that contention the court said, at page 694: “There being, in our opinion, nothing in the position taken in behalf of Joseph E. Williams, that the legacies, charged upon the whole estate, devised, real and personal, so changed the nature of the real estate as to make it, in the hands of the intestate, a new acquisition, within the meaning of our statute.' ’
In Kinney v. Glasgow, supra, wherein land devised had been subject to a legacy, the court held “the charge of a legacy on a devise, greater than the devisee would take by descent, will not convert the devise into one of purchase.”
In Banes v. Finney, 209 Pa. St., 191, under Section 9 of the Pennsylvania act relating to descent and distribution, the court upheld the same principle. In that case the ancestor had devised to his son, by his last will and testament, real estate, “subject to the payment of $1,700 to his son James, and $700 to his daughter Ann Eliza.” The Pennsylvania court upheld the following principle: “Under the said *32 will the said John Finney took said real estate devised to him as if by descent and not as a purchaser, notwithstanding the payments to the other heirs charged upon it by the testator: Kinney v. Glasgow, 53 Pa., 141.”
In the construction of the statute particularly involved here, in order to preserve the estate for the blood of the ancestor, this court has twice held that the word “ancestor” did not mean a lineal ancestor, as commonly known, but that “ancestor” included one from whom the intestate would have inherited. Brewster v. Benedict, 14 Ohio, 368, and Hostetler v. Peters, supra.
The citation of the Ohio authorities declaring that a valuable consideration imposed upon the face of a deed converts the title into one of purchase, cannot possibly apply here, and I doubt if much importance is attached to those cases in arriving at the proper conclusion here. Section 8573, General Code, definitely stamps the instrument in such cases as a “deed of gift.” But in dealing with ancestral property the legislature was careful not to qualify the term “devise” by the word “gift,” as it did when using the term “deed.” A devise to á devisee is not a sale to the latter. The latter does not purchase the property, but takes it as a gift from the ancestor, and if the devisee does not desire to accept the gift with the legacy imposed there is no obligation whatever upon Ms part to accept the devise.
For the reasons stated, the judgment of the court of appeals is affirmed.

Judgment .affirmed.

Hough, Matthias and Clark, JJ., concur.
Marshall, C. J., dissents.